UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARIO D. DAVIS,

                    Plaintiff,

v.

CATHERINE BAUMAN et al.,

                    Defendants.

_____/

Case No. 2:24-cv-140

Honorable Maarten Vermaat

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bauman, Patti Hubble, Tasson, Aho, Fleury, K. Hubble, Mann, Lancour, Loman, Chamberlin, and Salmi. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, Fourteenth Amendment, and conspiracy claims against Defendants Latoski, Decatur, and Price.

Plaintiff's retaliation claims against Defendants Latoski, Decatur, and Price remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan.

Plaintiff sues Warden Catherine Bauman, Assistant Deputy Warden Patti Hubble, Deputy Warden Unknown Tasson, and Mental Health Specialist Unknown Salmi in their personal and official capacities. In addition, Plaintiff sues Corrections Officers Dakota Latoski, Tyler Decatur, Unknown Aho, and Unknown Fleury, Sergeants K. Hubble and Unknown Mann, Lieutenant Unknown Price, Grievance Coordinator J. Lancour, Prison Counselor Cullen Loman, and Resident Unit Manager Unknown Chamberlin in their personal capacities.

Initially, the Court notes that Plaintiff's complaint is largely composed of vague assertions regarding the named Defendants and is lacking in specific allegations of fact. Plaintiff alleges that on December 29, 2023, he filed several grievances on Defendants Latoski, Aho, Decatur, and Fleury for "inappropriate behavior and violation of policies and procedures." (Comp., ECF No. 1, PageID.6.) Prior to filing the grievances, Plaintiff reported the inappropriate behavior to Supervisory Defendants Loman and Chamberlin. (*Id.*) Plaintiff states that Defendants Loman and Chamberlin failed to take corrective action and told Plaintiff that "they don't care and get the F out of their office." (*Id.*, PageID.7.)

Plaintiff was interviewed on the grievances by Defendant K. Hubble, who was also the subject of a grievance by Plaintiff. (*Id.*) Plaintiff asserts that Defendant K. Hubble went to Defendants Latoski and Decatur to "get their story straight." (*Id.*) The next day, Plaintiff received two misconduct tickets and a Notice of Intent (NOI) from Defendant Latoski. (*Id.*) Defendants

4

Latoski and Decatur subsequently told the block rep for Spruce Unit to tell Plaintiff to back off on his grievances or else Defendants Latoski and Decatur would make D-Wing a hostile environment for other prisoners. (*Id.*) As a result, a few gang members approached Plaintiff and tried to convince him to request protective custody so that they would not have to worry about having their cells searched. (*Id.*) Plaintiff states that Defendants Latoski, Decatur, and Aho faced D-Wing and watched prisoner movements. (*Id.*)

Plaintiff asked Defendants Loman and Chamberlin for a transfer to another facility because he feared that corrections officers would plant contraband in his cell or that he would become the victim of violence. (*Id.*) Plaintiff complained to Defendant Tasson that he was being constantly harassed and discriminated against and Defendant Tasson replied that Plaintiff had better stop writing grievances on corrections officers if he wanted to get off their radar. (*Id.*, PageID.8.) Plaintiff construed this comment as a direct threat to stop writing grievances. (*Id.*)

Plaintiff fails to explain the context for the following, but states that he spoke to Defendant K. Hubble and explained that he was afraid of dogs because he had been chased and bitten in the past. Defendant K. Hubble told Plaintiff that he must go through health services or mental health. (*Id.*) Plaintiff states that he received a satisfactory response from health care regarding his fear of dogs, but Mental Health Specialist Defendant Salmi was disrespectful and insensitive, telling Plaintiff that he should just "deal with it." (*Id.*) When Plaintiff asked her for her name, Defendant Salmi stated, "I don't have to give a prisoner my name." (*Id.*)

Plaintiff states that Defendant Price instructed unit corrections officers to write misconduct tickets on Plaintiff for anything he does and specified that they could write a threatening behavior ticket on Plaintiff to make sure he went to segregation. (*Id.*) Plaintiff states that Defendant Price's statement was overheard by prisoner Harris. (*Id.*)

Defendant Lancour restricted Plaintiff's ability to use the grievance procedure and enlisted Defendant Bauman's assistance by enacting a bogus restriction on or about the month of March. (*Id.*, PageID.9.) Defendant Mann participated in many hearings on misconducts written by Defendants Latoski, Decatur, and Aho. (*Id.*) Plaintiff states that because he had filed a grievance on Defendants Mann and Latoski for watching football in Defendant Loman's Office, it was impossible for Plaintiff to get a fair hearing. (*Id.*)

Plaintiff wrote to Defendant Bauman regarding his complaints on numerous occasions and during a face-to-face encounter, Defendant Bauman refused to address Plaintiff's concerns, stating "I know who you are, you['re] the one causing problems for the [corrections officers] in here." (*Id.*) Plaintiff claims that Defendant Bauman has been put on notice of her subordinates' misconduct by Plaintiff and other prisoners, and that some of the corrections officers in Maple and Aspen Units are facing murder allegations. Defendant Bauman has nonetheless failed to take any corrective action. (*Id.*, PageID.10.)

Plaintiff wrote to Ombudsman Chief Analyst Mike Banks in December of 2023 and on January 25, 2024. (*Id.*, PageID.9.) Plaintiff also contacted Defendant Patti Hubble, who is Defendant K. Hubble's stepmother, via letter. (*Id.*, PageID.9–10.) Defendant Patti Hubble's response was to move Plaintiff to level IV with 18 points, when there were prisoners in Spruce Unit with 35 points. (*Id.*, PageID.10.)

On May 19, 2024, Defendant Price was conducting a hearing on a misconduct charge received by Plaintiff and stated, "Ain't karma a bitch, I guess I'll have to keep spanking your ass." (*Id.*) Defendant Price gave Plaintiff 30 days loss of privileges on a class II misconduct. (*Id.*) Plaintiff asserts that he had previously only received 10 days loss of privileges for a class I

misconduct and that Defendant Price gave him an excessive punishment in retaliation for Plaintiff's use of the grievance system. (*Id.*)

On March 12, 2024, Plaintiff was unnecessarily handcuffed and taken to level IV, which Plaintiff claims is what Defendants Price and Latoski had promised the week before. (*Id.*) Plaintiff states that during the pack up of his property, Defendants Decatur and Latoski went through his legal paperwork and threw away "a bunch of important paperwork … that would help Plaintiff prevail in court." (*Id.*) Plaintiff states that the paperwork contained names of all correctional officers and administration officials that Plaintiff had come into contact with during the events described in this lawsuit as well as pertinent dates and times. (*Id.*)

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments and seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.11–18.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    **Claims for declaratory and injunctive relief**

Initially, the Court notes that Plaintiff is seeking declaratory and injunctive relief relating to his treatment at LMF. Plaintiff seeks an order forcing Defendants Bauman and Tasson to expunge his misconduct tickets, reclassify him to level II, and to transfer him to another facility. (ECF No. 1, PageID.16.)

The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule. Underlying the rule is the premise

that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96.

As noted above, since the events described in the complaint, Plaintiff has been transferred from URF to ECF. Therefore, the Court will dismiss Plaintiff's claims for declaratory and injunctive relief.

**B.    Interference with Plaintiff's use of the grievance procedure**

Plaintiff asserts that various Defendants interfered with his ability to exhaust grievances. Specifically, Plaintiff asserts in conclusory fashion that Defendant K. Hubble failed to do a proper investigation on Plaintiff's grievances and complaints which were assigned to him (ECF No. 1, PageID.12.), that Defendant Bauman restricted Plaintiff's use of the grievance procedure (*Id.*, PageID.13.), and that Defendant Lancour interfered with Plaintiff's ability to exhaust grievances by refusing to let Plaintiff's step III grievance process run its course (*Id.*).

**1.    Due Process**

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F.

9

App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants K. Hubble, Bauman, and Lancour did not deprive him of due process.

### 2.    First Amendment -- Right to Petition Government

Plaintiff's right to petition government is not violated by the alleged failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, the actions of Defendants K. Hubble, Bauman, and Lancour have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

### C.    Destruction of legal paperwork

Plaintiff states that during the pack up of his property on March 12, 2024, Defendants Decatur and Latoski went through his legal paperwork and threw away "a bunch of important paperwork … that would help Plaintiff prevail in court." (ECF No. 1, PageID.10.) Plaintiff states that the paperwork contained names, dates, and times of all correctional officers and administration officials that Plaintiff had come into contact with during the events described in this lawsuit. (*Id.*)

### 1.    Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper

11

and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail

them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting

barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996,

1009 (6th Cir. 1992).

      An indigent prisoner's constitutional right to legal resources and materials is not, however,

without limit. In order to state a viable claim for interference with his access to the courts, a

plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey*

*v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff

must plead and demonstrate that the shortcomings in the prison legal assistance program or lack

of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous

legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual

injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims. The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378,

391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous

claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis*

changed actual injury to include requirement that action be non-frivolous).

      In addition, the Supreme Court squarely has held that "the underlying cause of action . . .

is an element that must be described in the complaint, just as much as allegations must describe

the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's claim regarding the destruction of legal documents by Defendants Decatur and Latoski is largely conclusory. Plaintiff states that the destroyed documents included documents containing names of all correctional officers and administration officials, dates, and times relating to the events described in this lawsuit. But Plaintiff does not allege facts showing that the destruction of those documents caused actual injury to a nonfrivolous legal action. Therefore, Plaintiff fails to state an access to the courts claim against Defendants Decatur and Latoski.

### 2.    Due Process

To the extent that Plaintiff is asserting a violation of the Fourteenth Amendment as a result of the unauthorized destruction of his legal paperwork, Plaintiff's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth

Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state a due process claim regarding the alleged destruction of his property during the pack up of his property on March 12, 2024.

### D.    Due Process - Misconducts

Plaintiff claims that Defendants Latoski, Decatur, Aho, Mann, and Price violated his due process rights when they wrote false misconduct tickets on him, interfered with his right to a fair hearing, or subjected him to unfair and excessive punishment. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an

14

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See id.*, ¶ DDDD and Attachment D.

Plaintiff states that he was convicted of multiple misconducts but fails to specify details regarding each misconduct. To the extent that Plaintiff was convicted of Class II and III misconducts, they would not have resulted in the loss of good time or disciplinary credits. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from any Class II and II misconduct convictions he might have received.

To the extent that Plaintiff was convicted of Class I misconducts, such convictions may affect a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who

is serving an indeterminate sentence for an offense committed after 2000[2], can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantange*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff does not specifically describe what sanctions he received for his misconduct convictions other than to say that on May 19, 2024, Defendant Price gave Plaintiff 30 days loss of privileges on a class II misconduct despite the fact that Plaintiff had only received 10 days loss of privileges for a class I misconduct on a previous occasion. (ECF No. 1, PageID.10.)

The Court notes that confinement in punitive segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). The same is true for the loss of yard and phone privileges, the loss of prison employment, and the loss of ability to participate in a religious program, all of which are expected consequences of confinement in segregation. If confinement in segregation does not implicate a protected liberty interest, it follows that the loss of privileges stemming from that confinement do not implicate such an interest. Furthermore, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the

---

[2] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/ otis2profile.aspx?mdocNumber=231964 (last visited Jan. 15, 2025).

Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of privileges did not trigger a right to due process.

Finally, to the extent that Plaintiff is asserting that his misconduct convictions lead to him being transferred to a Level IV facility, Supreme Court has recognized that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)); *see also Williams v. Bass,* 63 F.3d 483, 485 (1995) ("[A]n inmate possesses no inherent constitutional right to placement in any particular prison or in any particular section within the prison system.") (citations omitted).

The Supreme Court has recognized a liberty interest in avoiding transfer to a prison with more adverse conditions in extreme circumstances. *Austin,* 545 U.S. at 223–24 (finding that confinement in a "Supermax" prison was "atypical and significant" because prisoners were kept in conditions similar to solitary confinement and lost their ability to seek parole, but that standing alone these conditions might not create a liberty interest). Plaintiff does not make any allegations about the conditions in level IV housing to suggest that it imposes the type of extreme deprivations necessary to constitute an atypical and significant hardship. Therefore, Plaintiff fails to state a due process claim based on the fact that he was reclassified to a security level IV.

### E.    Eighth Amendment

Plaintiff repeatedly asserts that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v.*

*McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In his complaint, Plaintiff claims that Defendants Latoski, Decatur, Aho, Fleury, Mann, and K. Hubble violated the Eighth Amendment when they harassed him and made verbal threats against him, and that Defendants Patti Hubble, Loman, Price, and Tasson were deliberately indifferent to Plaintiff's complaints regarding their subordinates. (ECF No. 1, PageID.11–14.). In addition, Plaintiff states that Defendant Salmi refused to help Plaintiff with he expressed fear of

dogs in violation of Eighth Amendment and that Defendant Patti Hubble used Plaintiff's complaint that he was afraid of dogs to inflict mental stress and create anguish that resulted in him having anxiety attacks. (ECF No. 1, PageID.13–14.)

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985).

None of Plaintiff's allegations regarding the named Defendants show that he was subjected to "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Although Plaintiff states that he sought help because he was afraid of dogs, he fails to specify whether he was being exposed to dogs at the time or to give any context for this claim. Because Plaintiff has failed to allege that he was subjected to a substantial risk of serious harm, his Eighth Amendment claims are properly dismissed.

### F.    Equal Protection

Plaintiff states in conclusory fashion that Defendants discriminated against him. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

To the extent that Plaintiff intends to assert an equal protection claim, such a claim is entirely conclusory. Plaintiff does not allege any facts showing that he was treated differently than any other similarly situated individual. Nor does he allege that a fundamental right is implicated in this case or that he is a member of a suspect class. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff fails to state an equal protection claim in this case.

### G.    Retaliation

Plaintiff claims that Defendants Latoski, Decatur, Aho, Fleury, Mann, K. Hubble, Price, Bauman, and Tasson retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). As set forth above, Plaintiff filed several grievances on Defendants Latoski, Aho, Decatur, and Fleury on December 29, 2023, for inappropriate behavior and violations of policy. (Comp., ECF No. 1, PageID.6.) Plaintiff was

21

interviewed on the grievances by Defendant K. Hubble, who was also the subject of a grievance by Plaintiff. (*Id.*, PageID.7.) Plaintiff asserts that Defendant K. Hubble interviewed Defendants Latoski and Decatur. (*Id.*) The next day, Plaintiff received two misconduct tickets and a Notice of Intent (NOI) from Defendant Latoski. (*Id.*) Defendants Latoski and Decatur subsequently told the block rep for Spruce Unit to tell Plaintiff to back off on his grievances or else Defendants Latoski and Decatur would make D-Wing a hostile environment for other prisoners. (*Id.*) As a result, a few gang members approached Plaintiff and tried to convince him to request protective custody so that they would not have to worry about having their cells searched. (*Id.*) Plaintiff states that Defendants Latoski, Decatur, and Aho faced D-Wing and watched prisoner movements. (*Id.*) Plaintiff also alleges that when he expressed a fear of dogs, Defendant K. Hubble told Plaintiff that he must go through health services or mental health. (*Id.*)

The Court notes that Plaintiff fails to allege any specific facts showing that Defendants Aho, Fleury, and K. Hubble took any negative action against him, much less that they acted with retaliatory intent. Because Plaintiff's retaliation claims against Defendants Aho, Fleury, and K. Hubble are entirely conclusory, they are properly dismissed. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. However, at this stage of the litigation, Plaintiff has set forth sufficient allegations regarding the conduct of Defendants Latoski and Decatur to prevent dismissal of Plaintiff's retaliation claims against them.

Plaintiff claims that Defendants Tasson and Bauman retaliated against him by failing to correct the behavior of their subordinates. Plaintiff alleges that when he complained to Defendant Tasson that he was being constantly harassed, Defendant Tasson stated that he had better stop writing grievances on corrections officers if he wanted to get off their radar. (ECF No. 1, PageID.8.) Plaintiff alleges that he wrote to Defendant Bauman regarding his complaints on

22

numerous occasions and during a face-to-face encounter, Defendant Bauman refused to address Plaintiff's concerns, stating "I know who you are, you['re] the one causing problems for the [corrections officers] in here." (*Id.*, PageID.9.)

Plaintiff fails to allege any facts showing that either Defendant Tasson or Defendant Bauman personally took any action against him. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff's retaliation claims against Defendants Tasson and Bauman are properly dismissed.

Plaintiff alleges that he wrote a grievance on Defendant Mann and as a result, he could not receive a fair hearing from Defendant Mann. However, Plaintiff fails to allege any specific facts in support of his retaliation claim against Defendant Mann. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

With regard to Defendant Price, Plaintiff states that Defendant Price instructed unit corrections officers to write misconduct tickets on Plaintiff for anything he does and specified that they could write a threatening behavior ticket on Plaintiff to make sure he went to segregation. (*Id.*, PageID.8.) Plaintiff states that Defendant Price's statement was overheard by prisoner Harris. (*Id.*) Plaintiff further alleges that during a misconduct hearing on May 19, 2024, Defendant Price stated, "Ain't karma a bitch, I guess I'll have to keep spanking your ass," and gave Plaintiff an excessive sentence of 30 days loss of privileges for a class II misconduct. (*Id.*, PageID.10.) The Court concludes that at this stage of the litigation, Plaintiff has set forth sufficient allegations to avoid dismissal of his retaliation claim against Defendants Price.

Finally, Plaintiff states that Defendant Patti Hubble was Defendant K. Hubble's stepmother and ordered that Plaintiff be moved to level IV with 18 points, when there were prisoners in Spruce Unit with 35 points. (*Id.*, PageID.10.) However, Plaintiff fails to allege any facts showing that Defendant Patti Hubble's conduct was motivated by a retaliatory motive. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish

24

retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

**H.    Conspiracy**

Plaintiff makes a conclusory assertion that Defendants conspired with one another to violate his rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete occurrences over a period of time involving individual members of prison staff. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only

25

compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Because a conspiracy claim fails when a plaintiff alleges facts showing that the defendants acted together but does not allege facts showing that the parties agreed to an objective to deprive the plaintiff of his civil rights, Plaintiff fails to state a plausible claim of conspiracy. *Siefert v. Hamilton Cnty. Bd. of Comm'rs*, 951 F.3d 753, 767-68 (6th Cir. Mar. 3, 2020).

## III.    Motion for Counsel

Plaintiff has filed a motion for the appointment of a court-appointed attorney (ECF No. 3). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 3) will therefore be denied.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bauman, Patti Hubble, Tasson, Aho, Fleury, K. Hubble, Mann, Lancour, Loman, Chamberlin, and Salmi will be dismissed for failure to state a claim, under 28

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, Fourteenth Amendment, and conspiracy claims against Defendants Latoski, Decatur, and Price.

Plaintiff's retaliation claims against Defendants Latoski, Decatur, and Price remain in the case.

An order consistent with this opinion will be entered.


Dated:    February 27, 2025                      /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge