UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MARIO D. DAVIS #231964,

        Plaintiff,

v.

CATHERINE BAUMAN, et al.,

        Defendants.
_____/

Case No. 2:24-cv-140

Hon. Maarten Vermaat
U.S. Magistrate Judge

# OPINION

## I. Introduction

This Opinion addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies (ECF No. 18), Plaintiff's response in opposition (ECF No. 21), the Defendants' reply to Plaintiff's response (ECF No. 22), Plaintiff's sur-reply (ECF No. 25), and Defendant's motion to strike Plaintiff's sur-reply (ECF No. 26).

Plaintiff – state prisoner Mario Davis – filed an unverified complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights while he was incarcerated at Alger Correctional Facility (LMF) in Munising, MI. (ECF No. 1.) Plaintiff filed suit against the following LMF staff members: Warden **Catherine Bauman**, Assistant Deputy Warden **Patti Hubble**, Deputy Warden **Unknown Tasson**, Corrections Officer (CO) **Dakota Latoski**, CO **Tyler Decatur**, CO **Unkown Aho**, CO **Unknown Fleury**, Sergeants **K. Hubble** and **Unknown Mann**,

Lieutenant **Unknown Price**, Grievance Coordinator **J. Lancour**, Prison Counselor **Cullen Loman**, Facilities RUM **Unknown Chamberlin**, and Mental Health Specialist **Unknown Salmi**. (*Id.*)

On February 27, 2025, this Court issued a Screening Opinion. (ECF No. 7.) In the Opinion, the Court dismissed for failure to state a claim Plaintiff's claims against Defendants Bauman, Patti Hubble, Tasson, Aho, Fleury, K. Hubble, Mann, Lancour, Loman, Chamberlin, and Salmi. (*Id.*, PageID.46.) The Court also dismissed, for failure to state a claim, Plaintiff's Eighth Amendment, Fourteenth Amendment, and conspiracy claims against Defendants Latoski, Decatur, and Price. (*Id.*)

Following the Screening Opinion, only Plaintiff's First Amendment retaliation claims against Defendants CO Latoski, CO Decatur, and Lt. Price remains in the case. (*Id.*)

Davis's allegations against CO Latoski, CO Decatur, and Lt. Price were set forth in the Court's February Screening Opinion. There, the Court provided in pertinent part:

> Plaintiff alleges that on December 29, 2023, he filed several grievances on Defendants Latoski, Aho, Decatur, and Fleury for "inappropriate behavior and violation of policies and procedures." (Comp., ECF No. 1, PageID.6.)
>
> [...]
>
> Plaintiff was interviewed on the grievances by Defendant K. Hubble, who was also the subject of a grievance by Plaintiff. (*Id.*) Plaintiff asserts that Defendant K. Hubble went to Defendants Latoski and Decatur to "get their story straight." (*Id.*) The next day, Plaintiff received two misconduct tickets and a Notice of Intent (NOI) from Defendant Latoski. (*Id.*) Latoski and Decatur subsequently told the block rep for Spruce Unit to tell Plaintiff to back off on his grievances or else Defendants

2

> Latoski and Decatur would make D-Wing a hostile environment for other prisoners. (*Id.*) As a result, a few gang members approached Plaintiff and tried to convince him to request protective custody so that they would not have to worry about having their cells searched. (*Id.*) Plaintiff states that Defendants Latoski, Decatur, and Aho faced D-Wing and watched prisoner movements. (*Id.*)
>
> […]
>
> Plaintiff states that Defendant Price instructed unit corrections officers to write misconduct tickets on Plaintiff for anything he does and specified that they could write a threatening behavior ticket on Plaintiff to make sure he went to segregation. (*Id.*) Plaintiff states that Defendant Price's statement was overheard by prisoner Harris. (*Id.*) Defendant Lancour restricted Plaintiff's ability to use the grievance procedure and enlisted Defendant Bauman's assistance by enacting a bogus restriction on or about the month of March. (*Id.*, PageID.9.) Defendant Mann participated in many hearings on misconducts written by Defendants Latoski, Decatur, and Aho. (*Id.*) Plaintiff states that because he had filed a grievance on Defendants Mann and Latoski for watching football in Defendant Loman's Office, it was impossible for Plaintiff to get a fair hearing. (*Id.*)
>
> […]
>
> On May 19, 2024, Defendant Price was conducting a hearing on a misconduct charge received by Plaintiff and stated, "Ain't karma a bitch, I guess I'll have to keep spanking your ass." (*Id.*) Defendant Price gave Plaintiff 30 days loss of privileges on a class II misconduct. (*Id.*) Plaintiff asserts that he had previously only received 10 days loss of privileges for a class I misconduct and that Defendant Price gave him an excessive punishment in retaliation for Plaintiff's use of the grievance system. (*Id.*) On March 12, 2024, Plaintiff was unnecessarily handcuffed and taken to level IV, which Plaintiff claims is what Defendants Price and Latoski had promised the week before. (*Id.*) Plaintiff states that during the pack up of his property, Defendants Decatur and Latoski went through his legal paperwork and threw away "a bunch of important paperwork … that would help Plaintiff prevail in court." (*Id.*) Plaintiff states that the paperwork contained names of all correctional officers and administration officials that Plaintiff had come into contact with during the events described in this lawsuit as well as pertinent dates and times. (*Id.*)

(Id., PageID.47–49.)

3

Plaintiff's remaining claims are summarized in the table below.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | First Amendment Retaliation | Corrections Officer Decatur | December 29, 2023 |
| 3 | First Amendment Retaliation | Corrections Officer Latoski | December 29, 2023 |
| 2 | First Amendment Retaliation | Lieutenant Price | May 19, 2024 |

On May 30, 2025, Defendants CO Decatur and Lt. Price moved for summary judgment based on exhaustion. (ECF No. 18.) CO Decatur and Lt. Price argue that Davis failed to properly exhaust his administrative remedies because (1) Davis's grievances against CO Decatur were rejected during the grievance process, and (2) Davis's grievances against Lt. Price did not allege that Lt. Price personally retaliated against Davis. (*Id.*, PageID.114-15.)

On July 8, 2025, Davis filed a response to Defendants CO Decatur and Lt. Price's motion for summary judgment. (ECF No. 21.) In his response, Davis argues that exhaustion was not required because the grievance policy is contradictory and prison staff thwarted his ability to access the grievance process. (*Id.*, PageID.226-28.) In Defendants' reply, they argue that Davis's assertions about the grievance process are vague, and Davis was able to access the process to file seven grievances in less than one month. (ECF No. 22, PageID.275.)

4

There exists no genuine dispute of material fact as to whether Davis properly exhausted his administrative remedies – he did not. Therefore, the Court grants Defendants' motion for summary judgment.

**II. Motion to Strike Plaintiff's Sur-Reply**

On August 18, 2025, Davis filed a second response to Defendants CO Decatur and Lt. Price's motion for summary judgment. (ECF No. 25.) CO Decatur and Lt. Price subsequently filed a motion to strike Plaintiff's sur-reply. (ECF No. 26.) Plaintiff's sur-reply is largely redundant to his initial reply. Attached to his sur-reply, Davis includes multiple exhibits, including multiple letters to Warden Bauman, who has been dismissed from the case.

This Court's Local Civil Rules allow for a response to a dispositive motion and then a reply to the response. W.D. Mich. LCivR 7.2(c). "The court may permit or require further briefing." *Id.* This Court has noted that "[i]t is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a sur-reply." *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted). The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply. *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010).

In this case, the Court did not grant leave for Davis to file a sur-reply. Therefore, the Court grants Defendants' Motion to Strike. The Court will not consider Plaintiff's sur-reply in its analysis.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). However, when the exhaustion issue is intertwined with the merits of a claim, the Seventh Amendment requires a jury trial on the exhaustion issue. *Richards v. Perttu*, \_\_ U.S. \_\_, 2025 WL 1698783 (June 18, 2025).

U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark,* 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective September 25, 2023) sets forth the applicable grievance procedures for prisoners in

8

MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ W, CC. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ CC. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ JJ. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ NN. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due. *Id.* The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ OO.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all*

> relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).

## V. Analysis

### A. Davis's Grievances

The Supreme Court has held that "to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are not defined by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted).  This Court has maintained that "as long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (citation omitted).

Davis's claims arise from incidents that allegedly occurred between December 2023 and May 2024.  Davis's grievance records show that he filed sixteen Step III grievances at LMF within that relevant timeframe.  (ECF No. 18-3, PageID.134-338 (Step III Grievance Report).)  The Defendants identify two grievances where Davis

11

listed CO Decatur as the grievance subject – LMF-210 and LMF-211. (*Id.*, PageID.113.) MDOC records, shown below, indicate that both grievances were rejected during the grievance process due to modified access procedure.

> **Michigan Department of Corrections**
> **GRIEVANCE REJECTION LETTER**
>
> DATE: 3/20/2024
>
> TO: DAVIS  231964   LOCATION: LMF  P-205
>
> FROM: Grievance Coordinator: J. Lancour
>
> SUBJECT: Receipt/Rejection/Denial for Step I Grievance
>
> Your Step I grievance regarding  Modified access, procedure was received in this office on  3/20/2024  and was rejected due to the following reason: Grievant is in violation of PD 03.02.103 page 6 of 7 letter, kk writing grievances while on modified access without obtaining the form from the grievance coordinator.
>
> Any future references to this grievance should utilize this identifier:  LMF / 2024 / 03 / 0210  / 28F

(*Id.*, PageID.151.)

> **Michigan Department of Corrections**
> **GRIEVANCE REJECTION LETTER**
>
> DATE: 3/20/2024
>
> TO: DAVIS  231964   LOCATION: LMF  P-205
>
> FROM: Grievance Coordinator: J. Lancour
>
> SUBJECT: Receipt/Rejection/Denial for Step I Grievance
>
> Your Step I grievance regarding  Modified access, procedure was received in this office on  3/20/2024  and was rejected due to the following reason: Grievant is in violation of PD 03.02.103 page 6 of 7 letter, kk writing grievances while on modified access without obtaining the form from the grievance coordinator.
>
> Any future references to this grievance should utilize this identifier:  LMF / 2024 / 03 / 0211  / 28F

(*Id.*, PageID.146.)

Prisoners on modified access are "able to obtain grievance forms only through the Step I Grievance Coordinator." MDOC PD 03.02.130, ¶ SS. A grievance form is only provided "if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy." *Id.* The Sixth Circuit has held that modified access to the grievance process does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances. *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001). Rather, it requires the prisoner to obtain permission from the grievance coordinator to file a grievance. *Id.*

Here, both grievances were rejected because Davis was on modified access and did not obtain the grievance form from the grievance coordinator. (ECF No. 18-3, PageID.146 & 151.) Davis's grievances were rejected because he did not comply with the policy.

Regarding Lt. Price, Defendants argue that Davis did not allege retaliation in his grievances against Lt. Price. (ECF No. 18, PageID.115.) Davis named Lt. Price as the subject of two grievances, LMF-54 and LMF-87. In Grievances LMF-54 and LMF-87, Davis asserts the following:

13

> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On or about 1/16/24 Lt. Price reviewed me on Misconduct found Grievant Guilty. Per P.D. 03.03.105 Prisoner Discipline Policy after a findings of Guilty or Not Guilty prisoner is suppose to recieve a copy of the misconduct report and Misconduct itself. Which Grievant only recieved a copy of the Report which Lt. Price failed to give Grievant a copy of all documents so he can appeal to Deputy Warden. Grievant, Knows the reasoning is because the Lt Price went and crossed out dates & times & ~~cross~~ tried to correct the ~~mistakes~~ mistakes that the reporting officer & reviewing officer didn't correct which the Misconduct was suppose to be tossed out. Grievant, sees this as a blatant cover-up & violation of his due process right. Grievant, needs all copies to present his defense to the Appeal Officer.
>
> RESPONSE (Grievant Interviewed?) ☐ Yes ☒ No  If No, give explanation. If resolved, explain resolution.)

(ECF No. 18-3, PageID.168 (Defendant's MSJ Exhibit 2).)

> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On or about the day of 1/16/24 at 9:55am Lt. Price violated P.D. 03.03.105(3) when he failed to Protect Grievants Constitutional Rights and Due Process Rights Pursuant to P.D. 03.03.105 IV Grievant, states that Lt. Price was derelict in his duties to Protect Grievant from wrong findings of Guilty and should have thrown out this misconduct. Instead, Lt. Price decided to side with his co-worker when Grievant pointed out the many mistakes made in the misconduct. Lt. Prices, willful act of neglectness has caused Grievant a great infliction of Mental Distress, Emotional Distress, Humiliation, and Damage. Staff have a duty to protect Prisoners from Harassment, Discrimination, Retaliation from others and even their own co-workers. By Lt. Price not applying his better judgement which durring the re-view he Lt. Price Acknowledge that the Misconduct should be tossed out he stated "I'm not going to do this I'll let you appeal it." This Ommission by Lt. Price showed his refusal to obey Policy is Dereliction of his Duty and should not be allowed to be a Lieutenant Let alone a Hearing officer. Lt. Price Should be Reprimanded by P.D. 03.03.105.
>
> RESPONSE (Grievant Interviewed?) ☐ Yes ☒ No  If No, give explanation. If resolved, explain resolution.)

(*Id.*, PageID.212.)

In LMF-54, Davis's grievance against Lt. Price does not mention retaliation. (*Id.*, PageID.168.) Therefore, Davis did not raise the issue in the grievance process and has not exhausted his administrative remedies through that grievance.

14

In LMF-87, Davis alleges that Lt. Price failed to protect Davis from retaliation. (*Id.*, PageID.212.) Davis grieved a failure to protect, but his claim before this Court is for retaliation. Accordingly, Davis has not exhausted his administrative remedies against Lt. Price concerning the retaliation claim. *See Vandiver v. Martin*, 48 Fed. Appx. 517, 519 (6th Cir. 2002) ("The exhaustion requirement would be defeated if an inmate were permitted to raise additional issues and name additional defendants in a § 1983 action that were never mentioned in the grievance.").

### B. Thwarting

Davis asserts that he "met every rule to the best of his ability, despite the barriers put in place by the Grievance Coordinator and Warden at Alger (LMF) as well as the verbal threats and intimidation tactics Plaintiff faced by Defendant's Decatur and Price." (ECF No. 21, PageID.228.) Davis further alleges that CO Decatur and Lt. Price threatened him on July 23, 2024. (*Id.*)

Davis's thwarting claims are not enough to create a genuine issue of material fact on the exhaustion issue for several reasons. First, Davis alleges that the thwarting conduct happened on July 23, 2024. However, his claims arise from incidents in December 2023 and May 2024, months before the alleged threats.

Moreover, the materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c). Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992)).

15

To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746. *Id.* In contrast, complaints that are unverified are not considered Rule 56 evidence. *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), report and recommendation adopted, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019). Here, Davis has not presented a verified statement to the Court with his thwarting allegations. Accordingly, Davis has not presented a genuine issue of material fact.

Finally, Davis's grievance record indicates that CO Decatur and Lt. Price's conduct did not prevent Davis from following grievance procedures. *See Peterson v. David*, No. 24-1696, 2025 U.S. App. LEXIS 2206, at *3 (6th Cir Aug. 26, 2025) ("Peterson argues that the grievance process was unavailable for two reasons. First, he maintains that prison officials retaliated against him for filing grievances by placing him in segregation under false pretenses. But the district court correctly rejected that argument because the defendants presented evidence that from the time of the first alleged incident in Peterson's complaint until he filed suit, he submitted nine grievances, proving that prison officials did not prevent the use of otherwise proper procedures.") (citations and internal quotation marks omitted).

Therefore, the Court respectfully dismisses Davis's First Amendment retaliation claims against CO Decatur and Lt. Price for failure to properly exhaust.

## VI. Conclusion

There exists no genuine dispute of material fact as to whether Davis properly exhausted his administrative remedies – he did not. Therefore, the Court grants Defendants' motion for summary judgment.

The Court dismisses the following claims:

1. Davis's First Amendment retaliation claims against CO Decatur.

2. Davis's First Amendment retaliation claims against Lt. Price.

The following claims remain:

1. Davis's First Amendment retaliation claims against CO Latoski.


Dated:   October 15, 2025                         /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).