UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MARIO D. DAVIS #231964,

        Plaintiff,

v.

CATHERINE BAUMAN, et al.,

        Defendants.

_____/

Case No. 2:24-cv-140

Hon. Maarten Vermaat
U.S. Magistrate Judge

<u>OPINION AND ORDER</u>

## I.  Introduction

This Opinion addresses Defendant Corrections Officer (CO) Dakota Latoski's motion for summary judgment, ECF No. 36.   Plaintiff has not responded to Defendant's motion.

Plaintiff – state prisoner Mario D. Davis – filed an unverified complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights while he was incarcerated at Alger Correctional Facility (LMF) in Munising, MI. Following screening and Defendants' motion for summary judgment based on exhaustion, only Davis's First Amendment retaliation claim against CO Latoski remains.

In the present motion for summary judgment, CO Latoski argues that she is entitled to summary judgment for the following reasons: (1) Davis did not engage in protected conduct; (2) Davis cannot prove the causation element of his retaliation

1

claim; and (3) CO Latoski is entitled to qualified immunity.    ECF No. 37.    Davis did

not respond to CO Latoski's motion.

In the opinion of the undersigned, there are no genuine disputes of material

fact as to Plaintiff's retaliation claim.    For the reasons stated below, the Court

**grants** Defendant's motion for summary judgment and dismisses Davis's case.

## II.    Factual Allegations

Davis's allegations against CO Latoski were set forth in the Court's Screening

Opinion.    There, the Court provided, in pertinent part:

> Plaintiff alleges that on December 29, 2023, he filed several grievances
> on Defendants Latoski, Aho, Decatur, and Fleury for "inappropriate
> behavior and violation of policies and procedures." (Comp., ECF No. 1,
> PageID.6.)
>
> […]
>
> Plaintiff was interviewed on the grievances by Defendant K. Hubble,
> who was also the subject of a grievance by Plaintiff. (*Id.*) Plaintiff asserts
> that Defendant K. Hubble went to Defendants Latoski and Decatur to
> "get their story straight." (*Id.*) The next day, Plaintiff received two
> misconduct tickets and a Notice of Intent (NOI) from Defendant Latoski.
> (*Id.*) Latoski and Decatur subsequently told the block rep for Spruce
> Unit to tell Plaintiff to back off on his grievances or else Defendants
> Latoski and Decatur would make D-Wing a hostile environment for
> other prisoners. (*Id.*) As a result, a few gang members approached
> Plaintiff and tried to convince him to request protective custody so that
> they would not have to worry about having their cells searched. (*Id.*)
> Plaintiff states that Defendants Latoski, Decatur, and Aho faced D-
> Wing and watched prisoner movements. (*Id.*)
>
> […]
>
> Plaintiff states that Defendant Price instructed unit corrections officers
> to write misconduct tickets on Plaintiff for anything he does and
> specified that they could write a threatening behavior ticket on Plaintiff
> to make sure he went to segregation. (*Id.*) Plaintiff states that Defendant
> Price's statement was overheard by prisoner Harris. (*Id.*) Defendant

2

Lancour restricted Plaintiff's ability to use the grievance procedure and enlisted Defendant Bauman's assistance by enacting a bogus restriction on or about the month of March. (*Id.*, PageID.9.) Defendant Mann participated in many hearings on misconducts written by Defendants Latoski, Decatur, and Aho. (*Id.*) Plaintiff states that because he had filed a grievance on Defendants Mann and Latoski for watching football in Defendant Loman's Office, it was impossible for Plaintiff to get a fair hearing. (*Id.*)

[…]

On May 19, 2024, Defendant Price was conducting a hearing on a misconduct charge received by Plaintiff and stated, "Ain't karma a bitch, I guess I'll have to keep spanking your ass." (*Id.*) Defendant Price gave Plaintiff 30 days loss of privileges on a class II misconduct. (*Id.*) Plaintiff asserts that he had previously only received 10 days loss of privileges for a class I misconduct and that Defendant Price gave him an excessive punishment in retaliation for Plaintiff's use of the grievance system. (*Id.*) On March 12, 2024, Plaintiff was unnecessarily handcuffed and taken to level IV, which Plaintiff claims is what Defendants Price and Latoski had promised the week before. (*Id.*) Plaintiff states that during the pack up of his property, Defendants Decatur and Latoski went through his legal paperwork and threw away "a bunch of important paperwork … that would help Plaintiff prevail in court." (*Id.*) Plaintiff states that the paperwork contained names of all correctional officers and administration officials that Plaintiff had come into contact with during the events described in this lawsuit as well as pertinent dates and times. (*Id.*)

ECF No. 7, PageID.47-49.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

The materials a court may consider in evaluating a motion for summary judgment are identified in Fed. R. Civ. P. 56(c). Courts, however, allow a plaintiff to rely on a "verified complaint," which has " 'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992)). To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746. *Id.* In contrast, complaints that are unverified are not considered Rule 56 evidence. *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at \*2 (W.D. Mich. Aug. 29, 2019) (citations omitted), report and recommendation adopted, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019). Here, Plaintiff has not presented a verified statement to the Court.

Furthermore, when, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville*

4

*Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### IV.  Analysis

In his Complaint, Davis asserts that he wrote several grievances against CO Latoski and other corrections officers on December 29, 2023.   Davis alleges that CO Latoski retaliated by writing Davis a misconduct report and notice of intent (NOI) to restrict telephone privileges.   CO Latoski argues that he is entitled to summary judgment on Davis's remaining retaliation claims because (1) Davis's grievances were frivolous, and (2) Davis cannot prove the causation element of his claims.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Id.*   Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.   *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).   The Sixth Circuit has also employed a burden-shifting approach:

Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the

defendant.    If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment. *Thaddeus-X*, 175 F.3d at 399.

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'"    *Hill v. Lappin*, 630 F.3d 468, 472 (2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)).    This right extends to grievances that are, in accordance with MDOC policy, raised with staff prior to submitting a formal, written grievance.    *Maben v. Thelen*, 887 F.3d 252, 265-66 (6th Cir. 2018) (explaining that it would be "unfair and illogical" to require prisoners to attempt informal resolution of a grievable issue, and then limit the recognition of protected conduct to filing formal, written grievances); MDOC PD 03.02.130(Q) (requiring a prisoner to attempt resolution of the grievable issue prior to filing a Step I grievance).    "If the grievances are frivolous, however, this right is not protected."    *Hill*, 630 F.3d at 472.    Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives."    *Smith*, 250 F.3d at 1037.    "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal."    *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara,* 680 F.3d 686, 699 (6th Cir. 2012)).

Generally, an action is deemed adverse when it increases the restrictions placed on a prisoner, or decreases the privileges that prisoner enjoys.    *Maben*, 887

6

F.3d at 266 (citing *Hill v. Lapin*, 630 F. 3d 468, 474 (6th Cir. 2004)).    To determine whether a misconduct ticket constitutes an adverse action, courts look to "both the punishment [the prisoner] could have faced and the punishment he did face."    *Id.* (citing *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004)).

While evidence of temporal proximity may not be enough on its own to survive summary judgment on a retaliation claim, the Sixth Circuit does construe such proximity as a factor in support of a causal connection. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

### A. Protected Conduct

Davis alleges that he wrote a grievance against CO Latoski on December 29, 2023.   Davis's Step I grievance in LMF-24-01-0009-17I, shown below, asserts that CO Latoski was browsing the internet and playing video games while at work.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| DAVIS | 231964 | LMF | 3-246B | 12/29/23 | 12/30/23 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? ___Yes!  12/30/23
If none, explain why. Sgt, I didn't get his name didn't have name tag showing AND He acted unconcern so I Left.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. C/o Latoski was in direct violation P.D 03.03.130(K) when he C/o Latoski was playing Video Game while he is suppose to be doing rounds and or sitting facing the unit instead of his back turned & he C/o Latoski was ingaged in this intense game of Call of Duty. How can C/o see whats going on or if someone (inmate) is being 2 Hacked or in his cell having a heart-Attack. C/o Latoski Also he on Facebook, website looking at High-Powerd weapons. Grievant ask that C/o Latoski be Disciplined according to P.D 03.03.100 & or giving 3days off or training so he knows his Job is not to be hear playing Video games/F.B./OR Looking at weapons.

RESPONSE (Grievant Interviewed?   ☑ Yes   ☐ No    If No, give explanation. If resolved, explain resolution.)
Prisoner Davis #231964 was interviewed. Prisoner Davis maintained his allegations as written in this grievance and did not offer any additional

7

ECF No. 18-3, PageID.155.

Davis filed another grievance on January 7, 2024, alleging that CO Latoski continued to engage in the same behavior.    *Id.*, PageID.159.    Davis's Step I grievance in LMF-24-01-0021-17I, is shown below.

*Id.*, PageID.159.

CO Latoski argues that Davis did not engage in protected conduct because his grievances were frivolous.    ECF No. 37, PageID.381.

Protected conduct under the First Amendment includes a prisoner's right to file civil rights actions against prison officials.    *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).    Merely threatening to file a lawsuit is considered a protected activity as well.    *Dean v. Conley*, 1999 U.S. App. LEXIS 29768, 1999 WL 1045166, at *2 (6th Cir. Nov. 9, 1999).    However, prisoners "cannot exercise [the right to file grievances] in a manner that violates legitimate prison regulations or penological

8

objectives." *Smith v. Campbell*, 250 F.3d 1032, 1037 (citing *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995)).   "'Abusive or manipulative use of a grievance system [is] not . . . protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (alteration in original) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).   This includes the filing of frivolous grievances.   *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous. As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is de minimis." 887 F.3d 252, 264-65 (6th Cir. 2018) (collecting cases). This Court has also found grievances involving "verifiably untrue" allegations to be frivolous. *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 U.S. Dist. LEXIS 244403, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *report and recommendation adopted*, No. 1:19-cv-116, 2020 U.S. Dist. LEXIS 244188, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020).

Similarly, the Sixth Circuit held that a prisoner's grievance complaining about conduct that had no impact on the prisoner was frivolous.   *Thaddeus-X v. Love*, No.

98-2211, 2000 U.S. App. LEXIS 11813, 2000 WL 712354, at *2-3 (6th Cir. May 22, 2000) (finding that a grievance complaining about a prison employee eating at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]"). Courts have found grievances to be *de minimis*, and therefore frivolous when the grievance complains of verbal abuse or harassment. *Sampson v. Davis*, No. 2:19-CV-176, 2022 U.S. Dist. LEXIS 125392, 2022 WL 2760061, at *3 (W.D. Mich. May 12, 2022) (finding that a prisoner's threat to file a grievance on a CO for verbal harassment was *de minimis* and therefore frivolous), *R&R adopted*, No. 2:19-CV-176, 2022 U.S. Dist. LEXIS 125010, 2022 WL 2753565 (W.D. Mich. July 14, 2022); *Maben*, 887 F.3d at 264 (citing *Scott v. Kilchermann*, No. 99-1711, 2000 U.S. App. LEXIS 23682, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000)).

In *White v. Perron*, this Court concluded that a prisoner's grievance that a prison guard was using the internet at work to conduct personal business was frivolous because the computer use did not impact the prisoner. *White v. Perron*, No. 2:20-CV-00247, 2023 WL 3871964, at *3 (W.D. Mich. Feb. 24, 2023), *report and recommendation adopted,* No. 2:20-CV-247, 2023 WL 3476288 (W.D. Mich. May 16, 2023).   That holding seems particularly relevant to this case.   But Davis's grievances against CO Latoski are somewhat different.   Davis grieved conduct that he asserted violated MDOC policy for prison employees, and, in the second grievance, he connected that policy violation with concerns about his own safety.   Specifically, he said that "this C/O continues to put the lives of his co-workers and Prisoner [sic] as he cannot perform his Job Duties . . . C/O Latoski has a duty to protect co-worders

10

and Prisoners. So, this C/O's reckless behavior jeopardizes people's lives." ECF No. 18-3, PageID.159. Thus, viewing the record in the light most favorable to the non-moving party, the undersigned concludes that a genuine issue of fact remains regarding whether Davis engaged in protected conduct.

### B. Causation

CO Latoski also argues that he is entitled to summary judgment because Davis's retaliation claim fails on the causation element.

To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). As stated above, at the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399; *see also Thomas*, 481 F.3d at 441.

In CO Latoski's affidavit, he states that he wrote Davis a misconduct report and NOI on January 9, 2023, while monitoring prisoner phone calls as part of his job responsibilities, he found that Davis made fifteen phone calls while on loss of privileges sanctions. ECF No. 37-5, PageID. 406-407. Furthermore, in his affidavit, CO Latoski says that neither the misconduct report nor NOI were

11

retaliatory.  CO Latoski asserts, as shown below, that he would have written the misconduct report and NOI whether Davis filed the grievances or not.

> 6.    I did not write the misconduct report or the notice of intent in retaliation for any grievances Davis may have filed.  I wrote the misconduct because my job responsibilities include monitoring prisoners' phone use and ensuring they are following MDOC and facility rules.  Davis's grievances had no effect on how I did my job, and I would have written the misconduct report and notice of intent whether or not Davis filed grievances.

ECF No. 37-5, PageID.407.

Davis did not respond to CO Latoski's motion and his complaint was unverified.  Accordingly, there is no genuine issue of material fact as to the misconduct report and NOI were motivated by Davis's grievances against CO Latoski – the record before the Court indicates that they were not.   Therefore, even if Davis did engage in protected conduct, CO Latoski is entitled to summary judgment on the causation element.

### V.  Qualified Immunity

Alternatively, Defendant argues that he is entitled to dismissal of the complaint against him based upon qualified immunity.  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises

the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 78 (2017)

(internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*,

577 U.S. 7, 11 (2015)).    As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced,

viewed in the light most favorable to the plaintiff, would permit a reasonable juror to

14

find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate.   *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

As set forth above, CO Latoski is entitled to summary judgment on Davis's remaining retaliation claims and those claims are dismissed.   Accordingly, CO Latoski is entitled to qualified immunity on those claims as well.

## VI.   Conclusion

For the reasons stated above, there are no genuine issues of material facts regarding Davis's retaliation claims against CO Latoski.   Accordingly, the Court hereby **grants** CO Latoski's motion for summary judgment and **dismisses** Davis's case.

IT IS SO ORDERED.

Dated:    May 14, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE